Opinion issued April 6, 2006 





 











In The
Court of Appeals
For The
First District of Texas
 

 
 
NO. 01-05-00370-CV
__________
 
ALETHA B. RAY, Appellant
 
V.
 
CASTILIAN VILLAGE TOWNHOUSE ASSOCIATION, INC., Appellee
 

 
 
On Appeal from County Civil Court at Law Number 2
Harris County, Texas
Trial Court Cause No. 802,908
 

 
 
MEMORANDUM OPINION
          Appellant, Aletha B. Ray, challenges the trial court’s rendition of summary
judgment in favor of appellee, Castilian Village Townhouse Association, Inc. (the
“Association”), in the Association’s suit against Ray for unpaid maintenance
assessments, late fees, and attorneys’ fees. In two issues, Ray contends that (1) the
trial court erred in granting the Association’s summary judgment motion because the
Association was not entitled to impose, as part of its maintenance assessments,
premiums for a common area insurance policy and because the Association was not
entitled to impose late fees for Ray’s unpaid maintenance assessments, and (2) the
trial court’s granting of the Association’s summary judgment was untimely.


 
          We affirm.
                                   Factual and Procedural Background
          Ray owns a town home located in the Castilian Village Town Home complex. 
At some point after Ray purchased her town home, the Association began to impose
and collect premiums for a common area insurance policy by including these
premiums as part of the maintenance assessments charged to the owners of the town
homes. The Association filed suit against Ray, seeking to recover maintenance
assessments and late fees that the Association alleged were past due. The Association
further alleged that, pursuant to its governing declarations and bylaws, the
Association was entitled to attorneys’ fees and court costs from Ray as well as a lien
against Ray’s town home.


 
          On July 16, 2004, Ray filed a no-evidence summary judgment motion.


 
However, there is no indication in the record that Ray’s motion was ever set for
hearing or that the trial court ruled on or considered Ray’s motion. On December 4,
2004, the Association subsequently filed a summary judgment motion, contending
that (1) Ray was an owner of a town home in the complex, (2) pursuant to the
Amendments of Declaration of Covenants, Conditions & Easements (the
“Declarations”) for the Association, which applied to all town homes within the
complex, Ray was responsible for the payment of maintenance assessments, interest,
attorneys’ fees, and court costs, and (3) pursuant to the bylaws of the Association, the
board of directors of the Association was authorized to bring suit against Ray to
recover the outstanding assessments and fees. The Association attached copies of the
Declarations and bylaws to its summary judgment motion. The Declarations provide,
in relevant part:
          Article VI    Covenants for Maintenance Assessments
 
Section 1. Creation of the Lien and Personal Obligation of Assessments. 
. . . [E]ach Owner of any Lot by acceptance of a Deed therefor; . . . is
deemed to covenant and agree to pay to the Association: (1) annual
assessments or charges, and (2) special assessments for capital
improvements, such assessments to be fixed, established, and collected
from time to time as hereinafter provided. The annual and special
assessments, together with such interest thereon and costs of collection
thereof, as hereinafter provided, shall be a charge on the land and shall
be a continuing lien upon the property . . . . 
 
Section 2. Purpose of Assessments. The assessments levied by the
Association shall be used exclusively for the purpose of promoting the
recreation, health, safety and welfare of the residents in the Properties
and in particular for the improvement and maintenance of the Properties,
services, and facilities devoted to this purpose and related to the use and
enjoyment of the Common Area, and of the Townhouses situated upon
the Properties. Such uses shall include, but are not limited to, the cost
to the Association of all taxes, repairs, replacement and maintenance of
the Common Area and of maintenance of the exteriors of the Lots or
Townhouses as may from time to time be authorized by the Board of
Directors, and other facilities and activities including, but not limited to,
. . . roofs and exterior walls of the Townhouses, . . . and other charges
required by this Declaration . . . or that the Board of Directors of the
Association shall determine to be necessary or desirable to meet the
primary purpose of the Association, including the establishment and
maintenance of a reserve for repair, maintenance, taxes, and other
charges specified herein. 
 
The bylaws provide, in relevant part:
 
          Article XI Assessments
 
As more fully provided in the Declaration, each member is obligated to
pay to the Association annual and special assessments which are secured
by a continuing lien upon the property against which the assessment is
made. Any assessments which are not paid when due shall be
delinquent. If the assessment is not paid within thirty (30) days after the
due date, the assessment shall bear interest from the date of delinquency
at the rate of 8% (percent) per annum, and the Association may bring an
action at law against the Owner . . . or foreclose the lien against the
property and interest, costs, and reasonable attorney’s fees of any such
action shall be added to the amount of such assessment. No Owner may
waive or otherwise escape liability for assessments provided for herein
by none [sic] use of the Common Area [or] abandonment of his Lot.
 
          The Association asserted that, pursuant to the Declarations and bylaws, it had
the authority to impose and collect premiums for the common area insurance policy
by including such premiums in the maintenance assessments charged to all owners
of town homes within the complex. The Association further asserted that it was
entitled to impose and collect late fees for Ray’s nonpayment of the maintenance
assessments. 
          Additionally, the Association stated that it had previously filed a separate
lawsuit (the “prior lawsuit”)


 against Ray for nonpayment of maintenance assessments
in the 280th District Court of Harris County, the Honorable Tony Lindsay presiding. 
The Association attached to its summary judgment motion a copy of the final
judgment, dated February 9, 2001, entered in the prior lawsuit in which Judge
Lindsay entered judgment against Ray for damages plus attorneys’ fees and
established a lien against Ray’s town home in favor of the Association.


 The
Association also attached a copy of a letter from Judge Lindsay in the prior lawsuit,
dated January 17, 2001, in which Judge Lindsay stated that the Association “validly
assessed the cost of insurance as part of the maintenance fees, and that . . . Ray was
indebted to [the Association] for past due fees.” The Association contended that in
light of Judge Lindsay’s prior findings, Ray’s arguments concerning the Association’s
authority to impose and collect assessments for the common area insurance premiums
were “barred as a matter of law by collateral estoppel and/or res judicata.” Finally,
the Association contended that while the Declarations and bylaws did not expressly
provide for the imposition of late fees, it was entitled to impose and collect late fees
on Ray’s delinquent payment of the maintenance assessments based on the Texas
Supreme Court’s opinion in Brooks v. Northglen Ass’n, 141 S.W.3d 158 (Tex. 2004)
and section 204.010(a)(10) of the Texas Property Code. See Tex. Prop. Code Ann.
§ 204.010(a) (Vernon Supp. 2005). 
          The Association also attached to its summary judgment motion the affidavit of
John Hughes, president of JDH Property Management, Inc. (“JDH”), the property
manager for the Association. Hughes testified that as property manager, “JDH is
responsible for collecting maintenance fees as approved and imposed upon property
owners within the . . . complex by the Association and its Board of Directors.” 
Hughes further testified that, based on his position as president of JDH, he had
personal knowledge of the following facts: 
          The board of directors of Castilian Village Townhouse
Association, Inc. has approved the imposition of late fees in the amount
of $25.00 per month against any owner of property within the . . . 
complex who is delinquent in payment of their maintenance
assessments. Neither the restrictions applicable to the complex, or the
by-laws or articles of incorporation of the Association provide for late
fees, nor limit the Association’s remedies for late payments to interest
only. As such, late fees have been charged to [Ray’s] account, as shown
on the Account Statement.
 
          As shown on the Account Statement, as of December 1, 2004,
[Ray] owes the Association the sum of $5,092.37 for maintenance
assessments, late fees, and attorneys fees imposed and charged against
[Ray’s] property . . . .
 
          The account statement referred to in Hughes’s affidavit testimony, which was
attached to the Association’s summary judgment motion, reflected all charges,
payments, and balances for Ray’s account from January 1, 1999 to December 1, 2004
and further reflected that Ray’s outstanding balance totaled $5,092.37. In the
conclusion of its summary judgment motion, the Association requested, “as of the
date of filing the motion, the total amount of unpaid assessments, including
maintenance fees, late charges, and attorneys’ fees” in the amount of $5,092.37, an
additional award of attorneys’ fees, interest at a rate of 8% per annum, and a lien on
Ray’s town home. Ray did not file a response to the Association’s summary
judgment motion, and there is nothing in the record to indicate that the trial court
considered anything else in the record to constitute a response to the Association’s
summary judgment motion. There is also no transcript of any hearing on the
Association’s summary judgment motion.
          On January 5, 2005, the trial court entered a “final judgment,” granting the
Association’s summary judgment motion, ordering that the Association recover from
Ray actual damages in the amount of $5,092.37, attorneys’ fees in the amount of
$1,000, court costs, and interest. The final judgment also ordered that a lien be
established against Ray’s town home. 
          On January 12, 2005, Ray filed a motion for new trial. On January 28, 2005,
the trial court entered proposed findings of fact and conclusions of law.


 On February
28, 2005, the Association filed a motion to modify the final judgment, stating that,
during a hearing on Ray’s motion for new trial,


 the trial court had instructed the
Association to review the account statement upon which the final judgment had been
based and to delete any late fees that were charged to Ray’s account prior to February
7, 2001, apparently in light of Judge Lindsay’s judgment entered in the prior lawsuit
on February 9, 2001. In accordance with the trial court’s instructions, the Association
attached a revised account statement to its motion to modify that deleted certain late
fees and reflected a revised outstanding balance of $4,843.81. On March 3, 2005,
Ray filed an “Affidavit of Accounting.” On March 18, 2005, the trial court entered
a modified final judgment, ordering that the Association recover from Ray actual
damages in the amount of $4,843.81, attorneys’ fees in the amount of $1,000, court
costs, and interest, and further ordering that a lien be established against Ray’s town
home. On April 5, 2005, Ray filed an “objection and opposition to the Association’s
motion for entry of judgment.” 
Standard of Review
          A movant for summary judgment has the burden of showing that there is no
genuine issue of material fact and that it is entitled to summary judgment as a matter
of law. Tex. R. Civ. P. 166a(c); Nixon v. Mr. Prop. Mgmt. Co., 690 S.W.2d 546, 548
(Tex. 1985). A plaintiff moving for summary judgment on its claim must establish
its right to summary judgment by conclusively proving all the elements of its cause
of action as a matter of law. Rhone-Poulenc, Inc. v. Steel, 997 S.W.2d 217, 223 (Tex.
1999). If the party opposing a summary judgment relies on an affirmative defense,
she must come forward with summary judgment evidence sufficient to raise an issue
of fact on each element of the defense to avoid summary judgment. Brownlee v.
Brownlee, 665 S.W.2d 111, 112 (Tex. 1984); Parker v. Dodge, 98 S.W.3d 297, 300
(Tex. App.—Houston [1st Dist.] 2003, no pet.). In conducting our review, we assume
that all evidence favorable to the non-movant is true and indulge every reasonable
inference and resolve all doubts in favor of the non-movant. Nixon, 690 S.W.2d at
548–49. 
Assessments and Fees
          In her first issue, Ray asserts that (1) the Association “illegally defined the term
common area to include single family townhouse (hazard insurance) as part of
Common Area assessment” and (2) the Association “obtained homeowner’s insurance
on private property without the knowledge, approval, and signature of co-owners all
of which constitutes fraud and forgery, without amending restrictions and without
filing such amendments with Harris County within the time requirement.”
          Here, the Association attached to its summary judgment motion documentary
evidence, supported by the affidavit testimony of the property manager for the
Association, who was charged with the duty to collect maintenance fees as approved
and imposed by the Association’s board of directors, establishing that Ray owed the
Association $5,092.37 in unpaid maintenance assessments, late fees, and attorneys’
and collection fees. Apparently at the instruction of the trial court, the Association
subsequently submitted a revised account statement reflecting Ray’s outstanding
balance to be $4,843.81. The Association also presented a copy of the Declarations,
which provided for the levy of assessments for the purpose of “promoting the
recreation, health, safety and welfare of the residents in the Properties and in
particular for the improvement and maintenance of the Properties, services, and
facilities devoted to this purpose and related to the use and enjoyment of the Common
Areas, and of the Townhouses situated upon the Properties” and that such uses
included “the cost to the Association of all taxes, repairs, replacement and
maintenance of the exterior of the Lots or Townhouses as may from time to time be
authorized by the Board of Directors.” 
          In regard to the dispute concerning late fees, Hughes testified that the
Association’s board of directors approved the imposition of late fees in the amount
of $25.00 per month against owners who were delinquent in payment of their
maintenance assessments, and that Ray had been charged late fees accordingly. As
noted by the Association, the Texas Supreme Court has recently addressed the
authority of an association to impose late fees. See Brooks, 141 S.W.3d at 158. In
Brooks, a group of homeowners argued that a homeowners’ association was not
entitled to unilaterally assess late fees when such fees were not provided for in the
deed restrictions. 141 S.W.3d at 168. The court, citing section 204.010(a)(10) of the
Texas Property Code, rejected the homeowners’ argument that the imposition of such
fees would defeat the purpose of the restrictions, which only imposed an interest
penalty for nonpayment. Section 204.010(a)(10) provides, in part: 
(a)     Unless otherwise provided by the restrictions or the association’s
articles of incorporation or bylaws, the property owners’
association, acting through its board of directors or trustees, may:
 
. . . . 
 
(10)   impose interest, late charges, and, if applicable,
returned check charges for late payments of regular
assessments or special assessments.
 
Tex. Prop. Code Ann. § 204.010(a) (Vernon Supp. 2005). In affirming the
association’s imposition of late fees, the court noted that the deed restrictions did not
say that interest penalties were the exclusive remedies for late payments and did not
say that late charges were not permitted. Brooks, 141 S.W.3d at 169. Similarly, here,
while the Association’s deed restrictions do not expressly authorize late fees, they do
not make interest the exclusive remedy for delinquent payment of maintenance
assessments nor do they prohibit late fees. In accord with Brooks, we conclude that
section 204.010 authorized the Association’s board of directors to impose late fees
in addition to interest charges and we hold that the Association’s summary judgment
evidence was sufficient to establish the Association’s right to summary judgment on
the Association’s claim against Ray for unpaid maintenance assessments, late fees,
and attorneys’ fees in the amount of $4,843.81.
          Additionally, we note that Ray did not file a response controverting any of the
evidence attached to the Association’s summary judgment motion, nor did she dispute
the amount of her outstanding account with the Association. Rule 166a provides that
“[i]ssues not expressly presented to the trial court by written motion, answer, or other
response shall not be considered on appeal as grounds for reversal.” Tex. R. Civ. P.
166a(c). “The term ‘answer’ in the context of the rule refers to an answer to the
motion, not an answer generally filed in response to a petition.” City of Houston v.
Clear Creek Basin Auth., 589 S.W.2d 671, 677 (Tex. 1979). “[I]ssues a non-movant
contends avoid the movant’s entitlement to summary judgment must be expressly
presented by written answer to the motion or by other written response to the motion
and are not expressly presented by mere reference to summary judgment evidence.” 
McConnell v. Southside Indep. Sch. Dist., 858 S.W.2d 337, 341 (Tex. 1993) (citing
Clear Creek Basin Auth., 589 S.W.2d at 678 (“the non-movant must expressly present
to the trial court any reasons seeking to avoid movant’s entitlement”)). Because Ray
failed to file any response to the Association’s motion, to the extent that she is
attempting to appeal any issues other than legal sufficiency, she has waived those for
our review. See Clear Creek Basin Auth., 589 S.W.2d at 678 (providing that if
nonmovant fails to file response to summary judgment motion, nonmovant can attack
only legal sufficiency of movant’s summary judgment evidence on appeal). 
          Accordingly, we hold that the trial court did not err in granting the Association
summary judgment on its claims against Ray.
          We overrule Ray’s first issue.
Timeliness of Summary Judgment Motion
          In her second issue, Ray contends that the Association’s motion “was filed as
a response more than 120 days after [Ray] filed her no-evidence summary judgment
motion.” First, we note that there is nothing in the record to suggest that the
Association’s summary judgment motion was filed “in response” to Ray’s no
evidence motion. Although the Association’s motion does address possible defenses
raised by Ray, it makes no direct reference to Ray’s no-evidence motion and instead
sets forth independent arguments for summary judgment. Second, Ray’s motion was
never set for hearing or submission, and there is nothing in the record to indicate that
the trial court ever ruled on Ray’s motion. The Association’s motion was timely
filed, and we hold that the trial court’s granting of the Association’s summary
judgment was not “untimely.”
          We overrule Ray’s second issue.
Conclusion
          We affirm the judgment of the trial court.
 
 
                                                                        Terry Jennings
                                                                        Justice

Panel consists of Justices Nuchia, Jennings, and Alcala.